Good morning. May it please the court, my name is Tom Quigley. I'm appearing on behalf of the plaintiffs in this matter. This is a diversity case that comes before the court on what we believe to be an erroneous grant of summary judgment that obviously impacts the nature of the court's review. I think it's undisputed that it's a de novo review. The keystone issue in this case was always whether a restrictive covenant in an employment contract was void or was valid. It came before the court. But the district court said that covenant is expired. Yes. And you concede that point, right? The covenant no longer restricts your client, correct? It did not, as of the time of the court's ruling. By one day, your honor, it's not a material issue. So if the court were to issue a declaratory judgment saying the covenant was no longer effective, that would simply be an advisory opinion, wouldn't it? No, it would not. Why? Because the issue for damages was whether the employer had a right to use a void restrictive covenant to prohibit Mr. Alexander from further employment. If the covenant... Are you talking about your potential interference claim? Yes. Well, I'm talking about your deck action. Let's take it one at a time. So the deck action you concede is finished, right? No, I do not, for two reasons, your honor. First, I don't think you can take them one at a time, and if you do, this is a cart before the horse issue. You can't get to the interference with contractual relations claim without deciding whether the employment covenant was void or not. Unless there's another element. In this case, the court found there was another element of such a claim that couldn't be proven, and that's the end of that case. The only element that was at issue on summary judgment was whether the interference was wrongful. That's the only element that was challenged on summary judgment. So to reach that issue, you don't have to reach the issue as to whether the covenant had expired or whether it was valid in the first instance. There's a difference between whether it's valid and whether exercise of it is wrongful. I beg to differ. If the clause is void, it cannot be validly used to prohibit employment. Well, that may be your attack, but the court seems to have found a difference between the two. If the court did, the court did not enunciate it, your honor, and I cannot understand it, nor square it with Arizona law, which governs this diversity action. The question... Interference is a quote. Interference with contractual relations is not inherently tortuous. That's very correct. But if either the method or the means is wrongful, then it is tortuous. You can't interfere with somebody's right to employment based on a void contract. Because it is void, that means it's wrongful to use that to prohibit his employment. And that was the theory that was before the trial court, but the trial court reversed the order and said, well, I'm not going to decide whether the contract is void or valid, and therefore if it's not decided whether it's void or valid, evidently I will assume it's valid, and therefore not wrongful as to means. The trial court, by the way, did not even address the question as to whether the motive of MRI was wrongful. The court just glossed over that issue, and we had raised that also. I think that's because of the theory that if you have a contract with anyone, even if some parts of it may be voidable, that's a legitimate instrument to send to a third party. Well, that may be the theory, but it's long under Arizona law if that was the trial court. I don't think it says that. First of all, let's go back. Your theory is void. Yes. That's just voidable. It's unenforceable. It's not void ab initio, right? No. You know, Your Honor, I have never considered it in that light because let's assume... Isn't that a pivotal difference? Not really, because even if it's voidable, the plaintiff has challenged it, and challenged it while it is in existence, to come back to the court's initial observation about the... No, but there's a difference in terms of the tortious interference of the contract claim. If it's something that just can't be enforced, then saying, well, we're sending it to... We still have an on-compete agreement. He sends it to a competitor. That may be within the four corners of the contract. If it's voided against public policy from the onset, that may make an entire... That may be a horse of a different color. I don't think it would in this case because we had already raised the issue. But by the way, now that the court mentioned that void is against public policy, I would still say that this is a void as opposed to voidable agreement. It may be voidable in the sense that the plaintiff actually has to bring action to get it declared void, but if it is void, it is because it's void as against public policy, because Arizona will not enforce a restrictive covenant that is greater than reasonable. Yes, that's the problem. I mean, Arizona law has used the word reasonable, which is sort of in the eye of the beholder. In my home state, we have specific geographic limits, time limits that are easily enforceable. But it's open to interpretation here. So why was the district court wrong in saying, well, it may or may not be reasonable, but even assuming it may be unreasonable, it still doesn't constitute the intentional interference of the contract? Well, I think the difference is that that's what the district court said. The district court said, I'm not going to consider it. I'm not even going to look at it. And if that wasn't clear enough in her judgment, when she came back on the attorney's fee, she specifically said, look, I didn't even consider whether this is reasonable or not. And, of course, in a declaratory judgment action, once you have incurred damages, the declaratory judgment is always going to lie. It never becomes moot once we have incurred damages. You need a theory of law to incur the damages. What's the theory of law in which you assert an entitlement to damages? Interference with prospective contractual relations. So that's the issue the court granted summary judgment on. Not really. By saying, and it may not have been as explicit as it could have been, but I read it to say, look, you're going to have to have some kind of malice or ill intent because simply asserting a legally protected right isn't going to be deemed a tortious misconduct. Two problems with that, Your Honor. Under Arizona law, it can either be malice, i.e., bad intent, or it can be bad means. But the real problem is that you relied on a contract that is not enforceable. Is there a cause of action in Arizona for asserting a contract claim that turns out not to be valid? Because it sounds to me like that's the claim that you're asserting here, that if you assert a right under a contract that turns out not to be valid or not to be enforceable, you automatically have the cause of action for damages. And I don't see where that necessarily follows. I don't think in just a breach of contract case that that would be true, absent the type of bad faith assertion of breach of contract that could get you sanctioned, get a party sanctioned. But absent that, no, you don't get extra contractual damages because you relied on a contract that was subsequently determined to be void in a breach of contract. But this was not a breach of contract case, Your Honor. So it's not enough. My reading of this is it's not enough to prove breach of contract to qualify for tortious damages. You need something else, which I infer is something of showing malice or improper means on MRI's part. No, that absolutely is not the law in Arizona. We do not have to show malice. We can show improper means, and the improper means... And the district court concluded there was no such showing. But if they're relying on a contract, here's what MRI does. They go to the future employer and they say, you cannot employ him. Why not? Because we have a covenant with him, a contract with him that says you cannot employ him. But if that contract is void, they have no right to do that. That's the legally protected means. I would concede that under Arizona... If the contract is void and they know it's void, right? No. So you have an unenforceable contract and you in good faith send it to somebody else and say, here's our contract, that meets the element sufficient to satisfy an intention of incurring? Yes. I don't think so. Under both Wagon Cellar and the Bar S case, and under the restatement, which Arizona has adopted. And I will grant the court's observation that one of the problems is under the restatement, which Arizona has adopted, this is a multifactorial question. And you can't exactly just say, well, there's one fact that is going to determine this entire issue. You're down to about 30 seconds. Do you want to save it for rebuttal? I would, Your Honor. Thank you for your argument. We'll hear from MRI at this time. Counsel? Good morning, Your Honors. May it please the Court. My name is John Blanchard, and together with my colleague, Diane Myers, we represent Manufacturing and Research Incorporated, or MRI, the appellee and defendant below. There is no case or controversy here. Mr. Alexander misunderstands the district court's judgment. The district court correctly recognized that the mootness analysis does not turn on the enforceability of an expired restrictive covenant. Instead, the mootness analysis focuses on MRI's conduct, the enforcement of that agreement. Mr. Alexander filed this lawsuit because he needed an order voiding his restrictive covenants so he could go to work for Jagania Silicone, MRI's competitor. When he filed his lawsuit at that time, this case absolutely was about the enforceability of those restrictions. If he got the order that he was looking for from the district court, he could have brought it to Jagania and started working. Now, what I hear, Mr. Quigley- If that had happened, if he had gone to court and obtained a declaratory judgment that the covenant was not enforceable, would he at that point have his interference action? He may have had an interference action pled, but he certainly wouldn't have been able to prove it or meet the elements. Let's suppose that it took him six months or a year to do it, but he ultimately obtained the judgment he sought. The court, state or federal court, says it's not enforceable. He can go to work. Would he have a claim for that period of time during which MRI relied upon the covenant? He would have had a damages claim if he could prove some sort of tortious conduct. For example, in this interference theory that we're talking about this morning, if he could prove improper conduct on the part of MRI in the enforcement of this agreement. So if MRI defends the DEC action in good faith, there's no cause of action, interference cause of action, just as if it were found to be expired by its terms, the same analysis. That's right, that's right, Your Honor. He would have to prove, again, I'm sorry if I'm repeating myself, he would have to prove some sort of tortious conduct to prove the elements of his damages theory. Mr. Alexander, what- Attempting to enforce an unenforceable provision. Would be sufficient to get you beyond summary judgment. Attempting to enforce an unenforceable? No, Your Honor, unless there is some other evidence of improper conduct. For example, if they drafted this agreement, you know, knowing that in no court of law would it ever be enforced, and they were just doing it for improper means or motives. I have trouble thinking of a hypothetical. You know, you say you can't work in Western Europe, America, or Asia. That's about as broad a restrictive covenant I've ever seen, geographically. This is a unique market. I think we described it, both sides, quite well. Maybe, but I've never seen a restrictive covenant. Maybe I've missed it, but I don't think I've ever seen a restrictive covenant enforced for that large geographic area, have you? Yes, Your Honor. You will see them where there is a niche market, where the marketplace and the marketplace of its employees is a global marketplace. It's pretty broad. It's not just the niche market. I understand everyone on that, but he's prohibited from selling all sorts of other products that aren't involved in the niche market, too, right? He was prohibited from selling or marketing the silicone medical devices in the market. That's right. In the market in which MRI operates, Endogonia. Which is the world, right? That's right. You couldn't sell them anywhere under your restrictive covenant. Under that restriction, that's absolutely right, Your Honor. Now, taking this a step further, let's assume that the district court analyzed this non-compete agreement as applied to Mr. Alexander. Arizona law in this contract allows the district court to strike grammatically separable language from the agreement in order to make it reasonable or enforceable. So this district court judge could have stricken whatever countries or states that she wanted to from the agreement. But she didn't get to that issue. She said it doesn't matter anymore, so I'm not going to address it, and as a result didn't seem to address the question of whether this agreement was on its face so beyond the pale that it itself might supply the answer to what was the malice or what was the improper means. With all due respect, Your Honor, the court did that analysis. The court did look at the non-compete agreement, did not ignore it, as Mr. Alexander suggests. The court reviewed the agreement and held that there was nothing unenforceable on the face of that agreement that would make the mere enforcement of it tortious interference. In other words, there was nothing so terrible, so bad about this agreement, that the mere enforcement of it could be a tort. What if it prevented this individual from obtaining employment in their field of training? Well, in this case, his field of training was sales, and MRI was his first experience with the silicone industry. So in this case, Your Honor, that's absolutely true. I understand the hypothetical question, but what if the covenant had the plain effect or by design meant that the individual could not find employment during the time period of the covenant? That certainly could be a different case, Your Honor. In that case, the district court may find that on the face of the agreement, the agreement is so overly broad. But again, Your Honor, I still don't think that would rise to the level of improper conduct. It might result in an order voiding the agreement, allowing that employee to go to work. But it wouldn't result in a money damages theory. Essentially, what Mr. Alexander is saying is the passage of time caused him harm. He's saying that the time between his request for a waiver and his first day at Begonia caused his harm. But MRI is not responsible for that passage of time. Mr. Alexander could have filed an application for a TRO. He could have sought a preliminary injunction. He could have invoked Rule 57's expedited hearing provision. He could have asked for the expedited review of his own motion for summary judgment. But he did none of those things, Your Honors. But if he had done any or all of them and been successful, your position still is no contract claim. No tort claim, Your Honor. No money damages. He could have brought an order. No tort claim for interference with contract. That's correct, Your Honor. Even if he had gone to court the day after your client refused to waive and had a hearing within five days and got a temporary restraining order, posted a bond, whatever, still no interference claim. That's right, Your Honor. He may have had a right to work at Begonia, but he would not have been able to prove his money damages theory in this case, which requires, under all the case law cited in our brief, requires improper conduct. Preparing for this oral argument this morning, I looked again at the case law, looking for cases like this one where the plaintiff alleged that the mere enforcement of an agreement constitutes improper, tortious conduct. Now, avoid agreement under his theory. Right. You have to take his theory. Under any theory. So let's use his theory. Sure. Mr. Alexander didn't cite any of those cases in his brief, and I couldn't find any in the Ninth Circuit or district court, but I did find a couple state court cases, and I brought copies with me. Now, let's touch on them real quickly, because I think they'd be helpful here. These are in your brief? These are not in my brief, Your Honor. Did your opponent see them? No. You can submit them afterwards to the clerk, but it's kind of unfair to your opponent to submit on cases to which you can't respond. Okay. However, we do have a process, because we do want to see all the citations to do that. Sure. Just bring it up to the clerk. And I struggled with that, because they're not federal, not, you know, Ninth Circuit authority, and they're not 2000. Well, it's a diversity case, right? This is a diversity case, but it's not. They aren't 2006, 2007 cases. These are older cases. Anyway, I'll do that. Time-honored cases, huh? I'm sorry? Time-honored cases. That's right. Okay. Yeah, well-settled laws, we say. Your Honor, under the cases cited by Mr. Alexander, the Swift and Hudson cases, those cases are distinguishable to this case. In those cases, the court never considered the damages theory or failed to consider what future harm could be remedied with a declaratory judgment. In this case, our district court did consider the damages theory to its end, looked at the non-concrete damages theory, looked at the deed agreement carefully, and concluded that there was nothing on it that was unenforceable, so unenforceable, so overly broad, that it could be a tort. So with that, Your Honor, I'll just remind the Court that Article III requires actual ongoing controversies. In Lewis v. Continental Bank Corp., the Supreme Court confirmed that this meant that the party, the plaintiff, must present more than abstract hypothetical disagreements. And that's all we have offered here by the plaintiff. Thank you, Your Honor. Okay, thank you. Rebuttal, you have about 30 seconds, counsel. Very briefly, then, Your Honor, there was sufficient evidence in this case by which the court could have found, had it conducted a full trial, that MRI's actual motive was simply to suppress competition, and that is not protectable under Arizona law. You can act in economic self-interest under Arizona law, right? Only if it is a valid economic self-interest, Your Honor. You can't use improper means, which is to void contract. And last, on the Article III issue, this was a diversity case. If there was no jurisdiction, the proper remedy is to remand the state court. That's where it was removed from. There should not have been judgment entered on the merits. Thank you, Your Honor. Okay, thank you both for your arguments. This case just argued will be submitted for decision. We'll proceed to the next case on the argument calendar, which is the United States against Blandin.
judges: Hawkins, Thomas, Clifton